IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| RICHARD SCARANTINO, Individually and On Behalf of All Others Similarly Situated, | ) ) ) |
| Plaintiff, | ) ) |
| | ) Case No. _____ |
| v. | ) ) |
| | ) JURY TRIAL DEMANDED |
| FAIRMOUNT SANTROL HOLDINGS INC., WILLIAM E. CONWAY, JENNIFFER D. DECKARD, MICHAEL G. FISCH, CHARLES D. FOWLER, STEPHEN J. HADDEN, MICHAEL C. KEARNEY, WILLIAM P. KELLY, MATTHEW F. LEBARON, MICHAEL E. SAND, and LAWRENCE N. SCHULTZ, | ) ) CLASS ACTION ) ) ) ) ) ) ) |
| Defendants. | ) |

**COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934**

Plaintiff, by his undersigned attorneys, for this complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

**NATURE OF THE ACTION**

1. This action stems from a proposed transaction announced on December 12, 2017 (the "Proposed Transaction"), pursuant to which Fairmount Santrol Holdings Inc. ("Fairmount" or the "Company") will be acquired by Unimin Corporation ("Parent"), a wholly-owned subsidiary of SCR-Sibelco NV, Bison Merger Sub, Inc. ("Merger Sub 1"), and Bison Merger Sub I, LLC ("Merger Sub 2," and together with Parent and Merger Sub 1, the "Buyers").

2. On December 11, 2017, Fairmount's Board of Directors (the "Board" or "Individual Defendants") caused the Company to enter into an agreement and plan of merger (the "Merger Agreement") with the Buyers. Pursuant to the terms of the Merger Agreement,

Fairmount shareholders will receive a number of shares of the combined company's common stock that will result in Fairmount shareholders owning only approximately 35% of the combined company, and cash equal to a total of $170,000,000, or approximately $0.74 per share.

3. On April 26, 2018, defendants filed a definitive proxy statement (the "Proxy Statement") with the United States Securities and Exchange Commission ("SEC") in connection with the Proposed Transaction.

4. The Proxy Statement omits material information with respect to the Proposed Transaction, which renders the Proxy Statement false and misleading. Accordingly, plaintiff alleges herein that defendants violated Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "1934 Act") in connection with the Proxy Statement.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over the claims asserted herein pursuant to Section 27 of the 1934 Act because the claims asserted herein arise under Sections 14(a) and 20(a) of the 1934 Act and Rule 14a-9.

6. This Court has jurisdiction over defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7. Venue is proper under 28 U.S.C. § 1391(b) because a substantial portion of the transactions and wrongs complained of herein occurred in this District.

## PARTIES

8. Plaintiff is, and has been continuously throughout all times relevant hereto, the owner of Fairmount common stock.

9. Defendant Fairmount is a Delaware corporation and maintains its principal executive offices at 8834 Mayfield Road, Chesterland, Ohio 44026. Fairmount's common stock is traded on the NYSE under the ticker symbol "FMSA."

10. Defendant William E. Conway ("Conway") served as Chairman of the Board of the Company since 2010.

11. Defendant Jenniffer D. Deckard ("Deckard") has served as President, Chief Executive Officer ("CEO"), and a director of the Company since 2013.

12. Defendant Michael G. Fisch ("Fisch") is a director of the Company.

13. Defendant Charles D. Fowler ("Fowler") has served as a director of the Company since 1984.

14. Defendant Stephen J. Hadden ("Hadden") is a director of the Company.

15. Defendant Michael C. Kearney ("Kearney") is a director of the Company.

16. Defendant William P. Kelly ("Kelly") has served as a director of the Company since 2005.

17. Defendant Matthew F. Lebaron ("Lebaron") has served as Chairman of the Board of the Company since 2010.

18. Defendant Michael E. Sand ("Sand") has served as a director of the Company since 2010.

19. Defendant Lawrence N. Schultz ("Schultz") has served as a director of the Company since 2010.

20. The defendants identified in paragraphs 10 through 19 are collectively referred to herein as the "Individual Defendants."

## CLASS ACTION ALLEGATIONS

21. Plaintiff brings this action as a class action on behalf of himself and the other public stockholders of Fairmount (the "Class"). Excluded from the Class are defendants herein and any person, firm, trust, corporation, or other entity related to or affiliated with any defendant.

22. This action is properly maintainable as a class action.

23. The Class is so numerous that joinder of all members is impracticable. As of December 8, 2017, there were approximately 224,092,378 shares of Fairmount common stock outstanding, held by hundreds, if not thousands, of individuals and entities scattered throughout the country.

24. Questions of law and fact are common to the Class, including, among others: (i) whether defendants violated the 1934 Act; and (ii) whether defendants will irreparably harm plaintiff and the other members of the Class if defendants' conduct complained of herein continues.

25. Plaintiff is committed to prosecuting this action and has retained competent counsel experienced in litigation of this nature. Plaintiff's claims are typical of the claims of the other members of the Class and plaintiff has the same interests as the other members of the Class. Accordingly, plaintiff is an adequate representative of the Class and will fairly and adequately protect the interests of the Class.

26. The prosecution of separate actions by individual members of the Class would create the risk of inconsistent or varying adjudications that would establish incompatible standards of conduct for defendants, or adjudications that would, as a practical matter, be dispositive of the interests of individual members of the Class who are not parties to the adjudications or would substantially impair or impede those non-party Class members' ability to

protect their interests.

27. Defendants have acted, or refused to act, on grounds generally applicable to the Class as a whole, and are causing injury to the entire Class. Therefore, final injunctive relief on behalf of the Class is appropriate.

## SUBSTANTIVE ALLEGATIONS

*Background of the Company and the Proposed Transaction*

28. Fairmount is a leading provider of high-performance sand and sand-based product solutions used by oil and gas exploration and production companies to enhance the productivity of their wells.

29. The Company also provides high-quality products, technical leadership, and applications knowledge to end users in the foundry, building products, water filtration, glass, and sports and recreation markets.

30. The Company's expansive logistics capabilities include a wide-ranging network of distribution terminals and railcars that allow the Company to effectively serve customers wherever they operate.

31. On December 11, 2017, the Individual Defendants caused the Company to enter the Merger Agreement.

32. Pursuant to the terms of the Merger Agreement, Fairmount shareholders will receive a number of shares of the combined company's common stock that will result in Fairmount shareholders owning only approximately 35% of the combined company, and cash equal to a total of $170,000,000, or approximately $0.74 per share.

33. According to the press release announcing the Proposed Transaction:

Fairmount Santrol (NYSE:FMSA) ("Fairmount") and Unimin Corporation ("Unimin"), a wholly owned subsidiary of SCR-Sibelco NV ("Sibelco"), today

5

announced that the Boards of Directors of both companies have approved a definitive agreement under which Fairmount and Unimin will combine in a tax-free, cash and stock transaction.

The new company, which will list on the New York Stock Exchange, will combine the two organizations' strong product portfolios and asset footprints to create an industry-leading proppant and industrial materials solutions provider, serving both energy and industrial customers. The combined company is expected to have 45 million tons of annual sand and mineral processing capacity and 3.0 million tons of annual coating capacity. In addition, the combined company will operate a comprehensive logistics platform with a large-scale terminal network across North America, comprising 96 distribution terminals with 18 unit-train capable terminals, and access to all major railways serving major oil and gas basins.

On a pro forma basis, the new company would have had revenue of approximately $2.0 billion and Adjusted EBITDA of approximately $400 million, excluding expected synergies, for the 12 month period ended September 30, 2017. The industrial segment represents 45% of gross profit and the proppants segment represents 55%. . . .

Strategic and Financial Position of the Combined Company

Leading materials solutions provider to both the energy and industrial segments: The combined company will be a leading industrial materials and proppant solutions provider with improved scale, approximately 45 million tons of annual sand and mineral production capacity, and more than 1.3 billion tons of combined reserves. The combined entity will be the largest provider of proppant solutions to the energy industry and of industrial materials solutions, will possess the most extensive technical and applications expertise, and will have the largest portfolio of high-purity sands and nepheline syenite production in North America.

Diversification across assets, geographies and end markets: The combined company's complementary asset footprint is well positioned to serve resilient and attractive markets including oil & gas, glass, construction, ceramics, coatings, polymers and foundry markets. Through both strategically located plants and an enhanced distribution network with access to all major rail lines, the combined company will have an exceptional position to deliver products and services to a broad customer base across energy and industrial markets.

Significant value creation through operational synergies and greater access to diverse and growing industrial business: The combined company expects to further enhance earnings and value through substantial operational synergies, targeting $150 million in annual synergies, and capturing 50% of the synergies in the first year following close. The new company's significant and more predictable cash flow generation is a benefit of more diverse revenue streams

from the industrial segment strengthened by combinational synergies, increased scale and complementarity of assets. These synergies and improved cash flows will provide the combined company with increased financial flexibility, including the ability to reduce leverage and make strategic investments.

Key Transaction Terms and Details

Under the terms of the merger agreement, at the closing of the transaction, Fairmount shareholders, including equity award holders, will receive $170 million in cash, or approximately $0.74 per share based on Fairmount's current diluted share count, and will own 35% of the combined company, with Sibelco owning the remaining 65%. The transaction is structured to be tax-free to Fairmount shareholders. Sibelco will maintain ownership of Unimin's high-purity quartz business, which mainly serves electronics manufacturers in Asia.

In connection with the transaction, Unimin has secured fully committed financing from Barclays Bank PLC and BNP Paribas to refinance both companies' outstanding debt obligations and certain transaction expenses. The companies believe that the strong and diversified cash flow resulting from the combination will allow the combined company to pay down debt expeditiously.

Concurrent with closing, the combined company intends to list its shares on the New York Stock Exchange, while Fairmount will be delisted from the New York Stock Exchange.

Governance, Leadership and Headquarters

Upon closing, the combined company's Board of Directors is expected to comprise 11 members, six of whom will be recommended by Sibelco, including Jean Luc Deleersnyder, Sibelco's Chief Executive Officer, and four of whom will be recommended by Fairmount. Jenniffer Deckard, current Chief Executive Officer of Fairmount Santrol, is expected to serve as CEO and as a director of the combined company. Sibelco has the right to nominate the independent Chairman of the combined company.

The executive leadership team will include a combination of existing leaders from both Unimin and Fairmount, with the combined company leaning on the significant strengths of the quality workforce across both companies.

The location of the combined entity's headquarters will be determined prior to closing, and the combined company will maintain regional offices in order to leverage both companies' significant operating presence, strong partnerships and talented employee bases. Unimin and Fairmount have highly recognizable and well respected names, and the name of the combined company will be determined before the closing of the transaction.

Approvals

The transaction is expected to close in mid-2018, subject to the approval of Fairmount shareholders, the receipt of regulatory approvals and the satisfaction of other customary closing conditions.

Fairmount Santrol has entered into a voting agreement with certain holders of 26 percent of Fairmount's outstanding common stock, pursuant to which they will vote their shares in favor of the transaction.

*The Proxy Statement Omits Material Information, Rendering It False and Misleading*

34. On April 26, 2018, defendants filed the Proxy Statement with the SEC in connection with the Proposed Transaction.

35. The Proxy Statement omits material information with respect to the Proposed Transaction, which renders the Proxy Statement false and misleading.

36. The Proxy Statement omits material information regarding the Company's financial projections, Unimin's financial projections, and the analyses performed by the Company's financial advisor, Wells Fargo Securities, LLC ("Wells Fargo").

37. With respect to the Company's financial projections, the Proxy Statement fails to disclose: (i) the line items used to calculate Adjusted EBITDA; (ii) the line items used to calculate unlevered free cash flow; (iii) total enterprise value projections for the Company; and (iv) a reconciliation of all non-GAAP to GAAP metrics.

38. With respect to the Unimin's financial projections, the Proxy Statement fails to disclose: (i) the line items used to calculate Adjusted EBITDA; (ii) the line items used to calculate unlevered free cash flow; (iii) total enterprise value projections for Unimin; and (iv) a reconciliation of all non-GAAP to GAAP metrics.

39. With respect to Wells Fargo's Discounted Cash Flow Analyses, the Proxy Statement fails to disclose: (i) the inputs and assumptions underlying the discount rates applied

8

by Wells Fargo; (ii) the inputs and assumptions underlying the perpetuity growth rates used by Wells Fargo; and (iii) the terminal values for the Company and Unimin.

40. With respect to Wells Fargo's Exchange Ratio Analysis, the Proxy Statement fails to disclose the fully diluted shares of Fairmount common stock and Unimin common stock as provided Fairmount management.

41. With respect to Wells Fargo's Selected Companies Analyses, the Proxy Statement fails to disclose the individual multiples and financial metrics for the companies observed by Wells Fargo in the analyses.

42. The disclosure of projected financial information is material because it provides stockholders with a basis to project the future financial performance of a company, and allows stockholders to better understand the financial analyses performed by the company's financial advisor in support of its fairness opinion. Further, when a banker's endorsement of the fairness of a transaction is touted to shareholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed.

43. The Proxy Statement also omits material information regarding potential conflicts of interest of Wells Fargo.

44. Specifically, the Proxy Statement fails to disclose the amount of compensation Wells Fargo and its affiliates have received for the past work it performed for Unimin.

45. Full disclosure of investment banker compensation and all potential conflicts is required due to the central role played by investment banks in the evaluation, exploration, selection, and implementation of strategic alternatives.

46. Additionally, the Proxy Statement fails to disclose whether any nondisclosure agreements executed by the Company and the prospective bidders contained standstill and/or "don't ask, don't waive" provisions that are or were preventing those counterparties from submitting superior offers to acquire the Company.

47. Without this information, stockholders may have the mistaken belief that, if these potentially interested parties wished to come forward with a superior offer, they are or were permitted to do so, when in fact they are or were contractually prohibited from doing so.

48. The omission of the above-referenced material information renders the Proxy Statement false and misleading, including, *inter alia*, the following sections of the Proxy Statement: (i) Background of the Merger; (ii) Recommendation of the Fairmount Board; (iii) Opinion of Fairmount Santrol's Financial Advisor; and (iv) Certain Unaudited Financial Forecasts of Fairmount Santrol and Unimin.

49. The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to the Company's stockholders.

## COUNT I

**Claim for Violation of Section 14(a) of the 1934 Act and Rule 14a-9 Promulgated Thereunder Against the Individual Defendants and Fairmount**

50. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

51. The Individual Defendants disseminated the false and misleading Proxy Statement, which contained statements that, in violation of Section 14(a) of the 1934 Act and Rule 14a-9, in light of the circumstances under which they were made, omitted to state material facts necessary to make the statements therein not materially false or misleading. Fairmount is liable as the issuer of these statements.

52. The Proxy Statement was prepared, reviewed, and/or disseminated by the

10

Individual Defendants. By virtue of their positions within the Company, the Individual Defendants were aware of this information and their duty to disclose this information in the Proxy Statement.

53. The Individual Defendants were at least negligent in filing the Proxy Statement with these materially false and misleading statements.

54. The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable stockholder will consider them important in deciding how to vote on the Proposed Transaction. In addition, a reasonable investor will view a full and accurate disclosure as significantly altering the total mix of information made available in the Proxy Statement and in other information reasonably available to stockholders.

55. The Proxy Statement is an essential link in causing plaintiff and the Company's stockholders to approve the Proposed Transaction.

56. By reason of the foregoing, defendants violated Section 14(a) of the 1934 Act and Rule 14a-9 promulgated thereunder.

57. Because of the false and misleading statements in the Proxy Statement, plaintiff and the Class are threatened with irreparable harm.

## COUNT II

### Claim for Violation of Section 20(a) of the 1934 Act
### Against the Individual Defendants

58. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

59. The Individual Defendants acted as controlling persons of Fairmount within the meaning of Section 20(a) of the 1934 Act as alleged herein. By virtue of their positions as officers and/or directors of Fairmount and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement,

they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that plaintiff contends are false and misleading.

60. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement alleged by plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

61. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as alleged herein, and exercised the same. The Proxy Statement contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction. They were thus directly involved in the making of the Proxy Statement.

62. By virtue of the foregoing, the Individual Defendants violated Section 20(a) of the 1934 Act.

63. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) of the 1934 Act and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the 1934 Act. As a direct and proximate result of defendants' conduct, plaintiff and the Class are threatened with irreparable harm.

## PRAYER FOR RELIEF

**WHEREFORE**, plaintiff prays for judgment and relief as follows:

A. Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

B. In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

C. Directing the Individual Defendants to disseminate a Proxy Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D. Declaring that defendants violated Sections 14(a) and/or 20(a) of the 1934 Act, as well as Rule 14a-9 promulgated thereunder;

E. Awarding plaintiff the costs of this action, including reasonable allowance for plaintiff's attorneys' and experts' fees; and

F. Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff respectfully requests a trial by jury on all issues so triable.

Dated: May 4, 2018      **LAW OFFICES OF JOHN C. CAMILLUS, LLC**

By: */s/ John C. Camillus*
John C. Camillus
P.O. Box 141410
Columbus, OH 43214
Telephone: (614) 558-7254
Email: jcamillus@camilluslaw.com

*Attorneys for Plaintiff*

**OF COUNSEL:**

**RIGRODSKY & LONG, P.A.**
300 Delaware Avenue, Suite 1220
Wilmington, DE 19801
Telephone: (302) 295-5310

**RM LAW, P.C.**
1055 Westlakes Drive, Suite 300
Berwyn, PA 19312
Telephone: (484) 324-6800